Marc Zemel
Evelyn Mailander
SMITH & LOWNEY, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PUGET SOUNDKEEPER ALLIANCE, )
                                                    )
                    Plaintiff,                      )
                                                    )
v.                                                  )
                                                    )           COMPLAINT
RABANCO, LTD. and REPUBLIC                          )
SERVICES ALLIANCE GROUP, INC.,                      )
                                                    )
                    Defendants.                     )
_____            )

## I.      INTRODUCTION

1.      This action is a citizen suit brought under Section 505 of the Clean Water Act ("CWA") as amended, 33 U.S.C. § 1365. Plaintiff, Puget Soundkeeper Alliance ("Soundkeeper"), seeks declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys' and expert witnesses' fees, for Defendants Rabanco, Ltd.'s and Republic Services Alliance Group, Inc.'s (collectively, "Rabanco") repeated and ongoing violations of the terms and conditions of its National Pollutant Discharge Elimination System ("NPDES") permit authorizing certain stormwater discharges of pollutants from Rabanco's facility in Seattle, Washington to navigable waters.

COMPLAINT - 1

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

## II.    JURISDICTION AND VENUE

2.    The Court has subject matter jurisdiction over Soundkeeper's claims under Section 505(a) of the CWA, 33 U.S.C. § 1365(a). Sections 309(d) and 505(a) and (d) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a) and (d), authorize the relief Soundkeeper requests.

3.    Under Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Soundkeeper notified Rabanco of its violations of the CWA and of Soundkeeper's intent to sue under the CWA by letter dated and postmarked December 4, 2025 ("Notice Letter"). A copy of the Notice Letter is attached to this complaint as Exhibit 1. The allegations in the Notice Letter are incorporated herein by this reference. In accordance with section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. § 135.2(a)(1), Soundkeeper notified the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region 10, and the Director of the Washington Department of Ecology ("Ecology") of its intent to sue Rabanco by mailing copies of the Notice Letter to these individuals on December 4, 2025.

4.    At the time of the filing of this Complaint, more than sixty days have passed since the Notice Letter and copies thereof were issued in the manner described in the preceding paragraph.

5.    The violations complained of in the Notice Letter are continuing and/or are reasonably likely to re-occur.

6.    At the time of the filing of this Complaint, neither the EPA nor Ecology has commenced any action constituting diligent prosecution to redress the violations alleged in the Notice Letter.

COMPLAINT - 2

7.     The source of the violations complained of is in King County, Washington, within the Western District of Washington, and venue is therefore appropriate in the Western District of Washington under Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), and 28 U.S.C. § 1391(b).

### III.    PARTIES

8.     Soundkeeper is suing on behalf of itself and its members.

9.     Soundkeeper is a non-profit corporation organized under the laws of the state of Washington. Soundkeeper is dedicated to protecting and preserving the environment of Washington State, especially the quality of its waters. Soundkeeper is a membership organization and has at least one member who is injured by Rabanco's violations.

10.     Soundkeeper has representational standing to bring this action. Soundkeeper's members are reasonably concerned about the effects of discharges of pollutants, including stormwater from Rabanco's facility, on water quality and aquatic species and wildlife that Soundkeeper's members observe, study, use, and enjoy. Soundkeeper's members are further concerned about the effects of discharges from Rabanco's facility on human health. In addition, discharges from Rabanco's facility lessen Soundkeeper's members' aesthetic enjoyment of nearby areas. Soundkeeper has members who live, work, swim, and recreate around or use the Duwamish River which is affected by Rabanco's discharges. Soundkeeper's members' concerns about the effects of Rabanco's discharges are aggravated by Rabanco's failure to record and timely report information about its discharges and pollution controls in a timely manner. The recreational, scientific, economic, aesthetic, and/or health interests of Soundkeeper and its members have been, are being, and will be adversely affected by Rabanco's violations of the CWA. The relief sought in this lawsuit can redress the injuries to these interests.

COMPLAINT - 3

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

11.     For example, one member of Soundkeeper is an avid open water swimmer in Puget Sound, including at Alki Beach, part of Elliot Bay which the Duwamish River flows into, and into which Rabanco discharges its polluted stormwater. This member swims in these places year-round and intends to continue doing so. This member enjoys swimming at Alki Beach in part because it provides opportunities to observe wildlife and to build community with other open water swimmers. This member also enjoys kayaking on the Duwamish and plans to continue doing so in the future, including by participating in annual staff trainings for self-rescue certifications that many Soundkeeper staff members complete. This member is aware that Rabanco discharges elevated levels of zinc, turbidity, oil & grease, and copper to the Duwamish River on a regular basis with its stormwater and violates its permit. This member reasonably worries about the adverse impacts of Rabanco's discharges and violations on the people, fish, and wildlife that use the river, and she feels deeply concerned.

12.     This member is also a Soundkeeper staff member who works on education, outreach, stewardship, and community service programs for Soundkeeper. Among these programs is training volunteers to conduct weekly salmon surveys on Longfellow Creek in West Seattle, the mouth of which is downstream from Rabanco's facility on the Duwamish. Data derived from these surveys support ongoing research to benefit water quality. When survey data shows evidence of poor waterbody health and declining water quality, it saddens this member, and they reasonably believe Rabanco's lack of compliance contributes to the polluted state of the Duwamish.

13.     Another member of Soundkeeper is an environmental scientist and toxicologist who has worked on Duwamish cleanup oversight and feels a profound connection to the river. This member also enjoys kayaking on the Duwamish, and surveying salmon mortality with

COMPLAINT - 4

Soundkeeper's Longfellow Creek program. This member loves bird and wildlife watching around the Duwamish River area. This member worries about the contaminant exposure experienced by fish as they travel the Duwamish, including exposure from contaminants released to the river by Rabanco. This member has also forgone recreation opportunities in the Duwamish because of exposure concerns.

14.    Defendants Rabanco, Ltd. and Republic Services Alliance Group, Inc. are corporations authorized to conduct business under the laws of the state of Washington.

15.    Rabanco operates a solid waste collection facility located at or about 7739 1st Ave S, Seattle, WA 98108 (referred to herein as the "facility").

## IV.    LEGAL BACKGROUND

16.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person, unless in compliance with the provisions of the CWA. A discharge of a pollutant from a point source to waters of the United States without authorization by a NPDES permit, issued under Section 402 of the CWA, 33 U.S.C. § 1342, is prohibited.

17.    The state of Washington has established a federally approved state NPDES program administered by Ecology. Wash. Rev. Code § 90.48.260; Wash. Admin. Code ch. 173-220. This program was approved by the Administrator of the EPA pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b).

18.    Under Section 402 of the CWA, 33 U.S.C. § 1342, Ecology has repeatedly issued iterations of the Industrial Stormwater General Permits, most recently on December 2, 2024, effective January 1, 2025, and set to expire December 31, 2029 (the "2025 ISGP"). The previous permit was issued on November 20, 2019, effective January 1, 2020, and set to expire December 31, 2024 (the "2020 ISGP"). The 2020 ISGP and 2025 ISGP (collectively, "the Permit"), contain

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

substantially similar requirements and authorize those that obtain coverage thereunder to discharge stormwater associated with industrial activity, a pollutant under the CWA, and other pollutants contained in the stormwater to waters of the United States subject to certain terms and conditions.

19.    The Permit imposes certain terms and conditions on those covered thereby, including requirements for monitoring and sampling of discharges, reporting and recordkeeping requirements, and restrictions on the quality of stormwater discharges. To reduce and eliminate pollutants in stormwater discharges, the Permit requires, among other things, that permittees develop and implement best management practices ("BMPs") and a Stormwater Pollution Prevention Plan ("SWPPP"), and apply all known and reasonable methods of prevention, control, and treatment ("AKART") to discharges. The specific terms and conditions of the Permit are described in detail in the Notice Letter, attached hereto as Exhibit 1 and incorporated herein by this reference.

## V.    FACTS

20.    Ecology granted Rabanco coverage for the facility under the 2020 ISGP under Permit number WAR312511. Rabanco was granted coverage under the 2025 ISGP under the same Permit number, WAR312511.

21.    Rabanco discharges stormwater and pollutants associated with industrial activity to the Duwamish River.

22.    Rabanco's facility is engaged in industrial activities and is approximately 2.54 acres. Rabanco's facility has at least three distinct points of discharge where stormwater and other pollutants leave the facility and eventually enter the Duwamish River, including Outfall

COMPLAINT - 6

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1    001, Outfall 002, and surface runoff to roadside ditches via the facility's driveways and other

2    locations.

3         23.    Rabanco has violated and continues to violate "effluent standards or limitations,"

4    as defined by 33 U.S.C. §1365(f), including conditions of the NPDES permit. *See* 33 U.S.C. §§

5    1311(a) and 1342. Rabanco's violations of the Permit and the CWA are set forth in sections I

6    through VII of the Notice Letter attached hereto as <u>Exhibit 1</u> and are incorporated herein by this

7    reference. In particular, and among the other violations described in the Notice Letter, Rabanco

8    has violated the Permit by violating AKART standards, failing to prepare and implement an

9    adequate SWPPP, failing to implement BMPs to control water quality, failing to collect and

10   analyze quarterly samples as required, failure to timely submit Discharge Monitoring Reports,

11   violating visual monitoring requirements, failing to implement corrective actions, violating

12   annual report requirements, failing to record information, failing to retain records, and failing to

13   report Permit violations.

14        24.    Rabanco discharges stormwater from the facility containing levels of pollutants

15   that exceed the benchmark values established by the Permit, including the days on which

16   Rabanco collected samples with the results identified in Tables 1 and 2, and is likely to continue

17   discharging comparably unacceptable levels of pollutants in its stormwater:

18   **Table 1 – Monitoring Point SD2\* – Benchmark Exceedances**

| Quarter in which sample collected | Cu Concentration<br><br>Benchmark: 14 µg/L | Zn Concentration<br><br>Benchmark: 117 µg/L | Oil & Grease<br><br>Benchmark: no visible oil & grease |
|---|---|---|---|
| 1st Quarter 2024 | | 210 µg/L | |
| 2nd Quarter 2024 | | | Yes |
| 1st Quarter 2025 | | | Yes |
| 2nd Quarter 2025 | 21 µg/L | 130 | Yes |
| 3rd Quarter 2025 | 36 | 230 | |

COMPLAINT - 7

**Table 2 – Monitoring Point SD4\* – Benchmark Exceedances**

| Quarter in which sample collected | Turbidity<br><br>Benchmark: 25 NTU | Cu Concentration<br><br>Benchmark: 14 µg/L | Zn Concentration<br><br>Benchmark: 117 µg/L | Oil & Grease<br><br>Benchmark: no visible oil & grease |
|---|---|---|---|---|
| 3rd Quarter 2023 | 54.7 NTU | 30 µg/L | 160 µg/L | |
| 4th Quarter 2023 | 137 | 24.5 | 192 | |
| 1st Quarter 2024 | 286 | 58 | 570 | |
| 2nd Quarter 2024 | 134 | 17 | 130 | |
| 4th Quarter 2024 | 68.8 | | | |
| 1st Quarter 2025 | 51.2 | 19 | | Yes |
| 2nd Quarter 2025 | 155 | 40 | 230 | |
| 3rd Quarter 2025 | 69 | 58 | 340 | |

\*SD2 and SD4 are monitoring point designations known and used by Rabanco.

25.    Rabanco attests that the stormwater samples identified in Tables 1 and 2 are representative of and accurately characterize the quality of stormwater discharges generated by Rabanco's facility during the associated calendar quarters. The stormwater monitoring data provided in Tables 1 and 2 shows benchmark exceedances included in the stormwater monitoring results that Rabanco submitted to Ecology.

26.    Rabanco's exceedances of the benchmark values indicate that Rabanco is failing to apply AKART to its discharges and is failing to implement an adequate SWPPP and BMPs. Rabanco violated and continues to violate Conditions S10 and S3 of the Permits by not developing, modifying, and/or implementing BMPs in accordance with the requirements of the Permit, and/or by not applying AKART to discharges from the facility. These requirements and Rabanco's violations thereof are described in detail in section I and section II of the Notice Letter, attached as <u>Exhibit 1</u>, and incorporated herein by this reference, with the exception of section II, paragraph 5.

COMPLAINT - 8

27.     Rabanco has violated and continues to violate the monitoring requirements of Conditions S3.B.5, S4.B, S5, S6.C, S7, and S9 of the Permit. Rabanco has failed to sample its stormwater discharges once during every calendar quarter at each distinct point of discharge offsite except for substantially identical outfalls excluded by a sufficiently detailed analysis in the facility's SWPPP. Rabanco has failed to analyze stormwater samples for total suspended solids (TSS), a parameter required for facilities discharging to Puget Sound Sediment Cleanup Sites, as required by Permit Condition S6 and Table 7. Rabanco has failed to comply with visual monitoring requirements required by Permit Condition S7 by failing to conduct Industrial Stormwater Monthly Inspections, failing to maintain the requisite inspection reports and checklists, and failing to make the requisite certifications and summaries by qualified personnel each and every month for the last five years. Rabanco's violations of the Permit's monitoring and Puget Sound Sediment Cleanup Site requirements are described in section III of the Notice Letter, attached hereto as Exhibit 1, and incorporated herein by this reference. These violations are reasonably likely to recur.

28.     Rabanco triggered Level One Corrective Action requirements under the Permit for each benchmark exceedance identified in Tables 1 and 2 above. Rabanco has violated the requirements of Condition S8.B of the Permits by failing to conduct Level One Corrective Action requirements in accordance with the Permit's conditions, including the required inspection to investigate the cause; review, revision, and certification of the SWPPP; the required implementation of additional operational source control BMPs; and the required summarization in the Annual Report, each time during the past five years that its quarterly stormwater sampling results were greater than a benchmark, including the benchmark exceedances listed in Tables 1 and 2 above. These Corrective Action requirements and Rabanco's violations thereof are

COMPLAINT - 9

SMITH & LOWNEY, PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

described in section IV.A of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference. These violations are reasonably likely to recur.

29.    Rabanco triggered Level Two Corrective Action requirements for each benchmark exceedance identified in Tables 1 and 2 above that occurred in any two quarters of a calendar year for the same pollutant parameter. Rabanco has violated the requirements of Condition S8.C of the Permits by failing to conduct a Level Two Corrective Action in accordance with Permit conditions, including the required review, revision, and certification of the SWPPP, the required implementation of additional structural source control BMPs, and the required summarization in the Annual Report, each time during the past five years that its quarterly stormwater sampling results were greater than a benchmark, for any two quarters during a calendar year for the same pollutant parameter, including the benchmark exceedances listed in Tables 1 and 2 above. These violations include but are not limited to Rabanco's failure to perform Level Two Corrective Action requirements for turbidity, copper, and zinc triggered by its stormwater sampling during calendar year 2023; and for turbidity, zinc, copper, and oil & grease triggered by its stormwater sampling during calendar year 2024. Rabanco must also perform Level Two Corrective Actions for turbidity, oil & grease, copper, and zinc triggered by its stormwater sampling during calendar year 2025. Although the deadline for implementing Level Two Corrective Actions for 2025 benchmark exceedances has not yet passed, on information and belief, Rabanco will violate its Level Two Corrective Action requirements for these exceedances, as well. These corrective action requirements and Rabanco's violations thereof are described in section IV.B of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference. These violations are reasonably likely to recur.

COMPLAINT - 10

30.     Rabanco triggered Level Three Corrective Action requirements for each

benchmark exceedance identified in Tables 1 and 2, above, that occurred in any three quarters of

a calendar year for the same pollutant parameter. Rabanco has violated the requirements of

Condition S8.D of the Permit by failing to conduct a Level Three Corrective Action in

accordance with Permit conditions, including the required review, revision, and certification of

the SWPPP, the required preparation and submission of an engineering report describing

additional treatment BMPs, the required submission of an Operation and Maintenance Manual,

the required implementation of additional treatment BMPs, and the required summarization in

the Annual Report, each time during the past five years that its quarterly stormwater sampling

results were greater than a benchmark, for any three quarters during a calendar year, including

the benchmark exceedances listed in Tables 1 and 2 above. These violations include Rabanco's

failure to perform Level Three Corrective Action requirements for turbidity triggered by its

stormwater sampling during calendar year 2024. Rabanco must also perform Level Three

Corrective Actions for turbidity and copper triggered by its stormwater sampling during calendar

year 2025. Although the deadline for implementing Level Three Corrective Actions for 2025

benchmark exceedances has not yet passed, on information and belief, Rabanco will violate its

Level Three Corrective Action requirements for these exceedances, as well. These corrective

action requirements and Rabanco's violations thereof are described in section IV.C of the Notice

Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These

violations are reasonably likely to recur.

31.     Rabanco has failed to comply with the requirement to submit an accurate and

complete annual report to Ecology each year as required by Permit Condition S9.C. Rabanco has

failed to comply with the requirement to document its corrective actions as required by Permit

COMPLAINT - 11

1    Conditions S8.B-D. Rabanco has violated these conditions because the annual reports submitted

2    by Rabanco do not include the required information including as to corrective actions. These

3    requirements and Rabanco's violations thereof are described in section V of the Notice Letter,

4    attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference. These violations are

5    reasonably likely to recur.

6        32.    Rabanco has violated the recordkeeping requirements of Permit Condition S4.B.4

7    because Rabanco does not record and retain specified information for each stormwater sample

8    taken, including the sample date and time, a notation describing if Rabanco collected the sample

9    within the first 12 hours of stormwater discharge event, an explanation of why Rabanco could

10   not collect a sample within the first 12 hours of a stormwater discharge event, the sample

11   location, method of sampling and of preservation, and the individual performing the sampling, as

12   required by the Permit Condition. These requirements and Rabanco's violations thereof are

13   described in section VI.A of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated

14   herein by this reference. These violations are reasonably likely to recur.

15       33.    Rabanco has violated the record keeping requirements of Permit Condition S9.D.

16   Rabanco does not retain for a minimum of five years a copy of the current Permit, a copy of

17   Rabanco's coverage letter, records of all sampling information, inspection reports including

18   required documentation, any other documentation of compliance with permit requirements, all

19   equipment calibration records, all BMP maintenance records, all original recordings for

20   continuous sampling instrumentation, copies of all laboratory results, copies of all required

21   reports, and records of all data used to complete the application for the Permit, as required by the

22   Permit Conditions. These requirements and Rabanco's violations thereof are described in section

23

24   COMPLAINT - 12

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

VI.B of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference. These violations are reasonably likely to recur.

34.    Condition S9.F of the Permit requires Rabanco to take certain actions, including reporting to Ecology and immediately taking actions, in the event Rabanco is unable to comply with any terms and conditions of the Permit which may endanger human health or the environment. Rabanco has violated these requirements of the Permit by failing to report and correct permit violations, including each and every time Rabanco violated corrective action requirements as described above in paragraphs 28-30, and each and every time Rabanco discharged stormwater with amounts of pollutants in excess of the Permit benchmarks as described in paragraph 24 above. These requirements and Rabanco's violations thereof are described in section VII of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference. These violations are reasonably likely to recur.

35.    A significant penalty should be imposed against Rabanco under the penalty factors set forth in 33 U.S.C. § 1319(d).

36.    Rabanco's violations were avoidable had Rabanco been diligent in overseeing facility operations and maintenance.

37.    Rabanco benefited economically as a consequence of its violations and failure to implement improvements at the facility.

38.    Rabanco's violations caused and contributed to pollution in the water column and sediments of the receiving water, which may be ameliorated by an order from the Court requiring clean up or monitoring.

///

///

COMPLAINT - 13

Smith & Lowney, pllc
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

## VI.    CAUSE OF ACTION

39.    The preceding paragraphs and the allegations in the Notice Letter attached hereto as Exhibit 1 are incorporated herein.

40.    Rabanco's violations of its NPDES permit described herein and in the Notice Letter constitute violations of "effluent standard(s) or limitation(s)" as defined by Section 505 of the CWA, 33 U.S.C. § 1365.

41.    No agency has taken an enforcement action constitution diligent prosecution or otherwise precluding claims under 33 U.S.C. §§ 1319 or 1365(a).

42.    Prior notice of violations and claims was provided to Rabanco and others as required.

43.    These violations committed by Rabanco are ongoing or are reasonably likely to reoccur. Any and all additional violations of the Permit and the CWA which occur after those described in Soundkeeper's Notice Letter, but before a final decision in this action, should be considered ongoing violations subject to this Complaint.

44.    Without the imposition of appropriate civil penalties and the issuance of an injunction, Rabanco is likely to continue to violate the Permit and the CWA to the further injury of Soundkeeper, its members, and others.

## VII.    RELIEF REQUESTED

Wherefore, Soundkeeper respectfully requests that this Court grant the following relief:

A.    Issue a declaratory judgment that Rabanco has violated and continues to be in violation of the Permit and the CWA;

B.    Enjoin Rabanco from operating the facility in a manner that results in further violations of the Permit and the CWA;

COMPLAINT - 14

C.     Order Rabanco to immediately develop and implement a SWPPP that complies with the Permit at the facility;

D.     Order Rabanco to allow Soundkeeper to participate in the development and implementation of Rabanco's SWPPP and compliance plan;

E.     Order Rabanco to provide Soundkeeper, for a period beginning on the date of the Court's Order and running for three years after Rabanco achieves compliance with all of the conditions of the Permit, with copies of all reports and other documents which Rabanco submits to Ecology regarding Rabanco's coverage under the Permit at the facility at the time these documents are submitted;

F.     Order Rabanco to take specific actions to remediate the environmental harm caused by its violations;

G.     Order Rabanco to pay civil penalties of $68,445 per day of violation for each violation committed by Rabanco, pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19 and 19.4;

H.     Award Soundkeeper its litigation expenses, including reasonable attorneys' and expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d), and any other applicable authorization; and

I.     Award such other relief as this Court deems appropriate.

///

///

///

///

///

COMPLAINT - 15

1    RESPECTFULLY SUBMITTED this 13th day of February, 2026.

2

3            Smith & Lowney, PLLC

4    By:        By: *s/Marc Zemel*
                Marc Zemel, WSBA #44325
                By: *s/Evelyn Mailander*
                Evelyn Mailander, WSBA #62827
5                Attorneys for Plaintiff
                2317 E. John St.,
6                Seattle, WA 98112
                Tel: (206) 860-2124
7                Fax: (206) 860-4187
                E-mail: marc@smithandlowney.com,
8                evelyn@smithandlowney.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

COMPLAINT - 16

Exhibit 1

# SMITH & LOWNEY
### — PLLC —
## ATTORNEYS AT LAW

December 4, 2025

**Via Certified Mail - Return Receipt Requested**

Managing Agent
Rabanco, Ltd.
7739 1st Ave S.
Seattle, WA 98108

Managing Agent
Republic Services Alliance Group, Inc.
18500 North Allied Way
Phoenix, AZ 85054

Re:     **NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT AND REQUEST FOR COPY OF STORMWATER POLLUTION PREVENTION PLAN**

Dear Managing Agent:

We represent Puget Soundkeeper Alliance ("Soundkeeper"), 130 Nickerson St. #107, Seattle, WA 98109, (206) 297-7002. Any response or correspondence related to this matter should be directed to us at the letterhead address (Smith & Lowney, PLLC, 2317 E John St., Seattle, WA 98112). This letter is to provide you with sixty days' notice of Soundkeeper's intent to file a citizen suit against Republic Services Alliance Group, Inc. d/b/a Republic Services, and Rabanco, Ltd. (collectively, "Rabanco") under section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, for the violations described below. This letter is also a request for a copy of the complete and current stormwater pollution prevention plan ("SWPPP") required by Rabanco's National Pollution Discharge Elimination System ("NPDES") permit.

Rabanco was granted coverage under Washington's Industrial Stormwater General Permit ("ISGP") issued by the Washington Department of Ecology ("Ecology") effective January 1, 2020, and expired on December 31, 2024 under NPDES No. WAR312511 (the "2020 Permit"). Ecology granted Rabanco coverage under the current iteration of the ISGP effective January 1, 2025, and set to expire on December 31, 2029 (the "2025 Permit") and maintains the same permit number, WAR312511.

Rabanco has violated and continues to violate effluent standards and limitations under the CWA (see 33 U.S.C. §§ 1365(f)) including the terms and conditions of the 2020 Permit and the 2025 Permit (collectively, the "Permits") with respect to operations of, and discharges of stormwater and pollutants from, its facility located at or about 7739 1st Ave. S., Seattle, WA 98108 (the "facility") as described herein, to the Duwamish River. The facility subject to this notice includes any contiguous or adjacent properties owned or operated by Rabanco.



## I.    COMPLIANCE WITH STANDARDS.

Condition S10.C of the Permits requires Rabanco to apply all known and reasonable methods of prevention, control, and treatment ("AKART") to all discharges, including preparation and implementation of an adequate Stormwater Pollution Prevention Plan ("SWPPP") and best management practices ("BMPs"). Rabanco has violated and continues to violate these conditions by failing to apply AKART to its discharges or to implement an adequate SWPPP and BMPs, as evidenced by the elevated levels of pollutants in its discharge indicated in Tables 1 and 2 and as described below in this notice of intent to sue.

**Table 1 – SD2* Benchmark Exceedances**

| Quarter in which sample collected | Zn Concentration (Benchmark 117 µg/L) | Turbidity (Benchmark 25 NTU) | Cu Concentration (Benchmark 14 µg/L) | Oil & Grease (Benchmark No visible oil & grease) |
|---|---|---|---|---|
| 1st Quarter 2024 | 210 µg/L | | | |
| 2nd Quarter 2024 | | | | Yes |
| 1st Quarter 2025 | | | | Yes |
| 2nd Quarter 2025 | 130 | | 21 µg/L | Yes |
| 3rd Quarter 2025 | 230 | | 36 | |

*SD2 and SD4 are monitoring point designations known and used by Rabanco.

**Table 2 – SD4* Benchmark Exceedances**

| Quarter in which sample collected | Zn Concentration (Benchmark 117 µg/L) | Turbidity (Benchmark 25 NTU) | Cu Concentration (Benchmark 14 µg/L) | Oil & Grease (Benchmark No visible oil & grease) |
|---|---|---|---|---|
| 3rd Quarter 2023 | 160 µg/L | 54.7 NTU | 30 µg/L | |
| 4th Quarter 2023 | 192 | 137 | 24.5 | |
| 1st Quarter 2024 | 570 | 286 | 58 | |
| 2nd Quarter 2024 | 130 | 134 | 17 | |
| 4th Quarter 2024 | | 68.8 | | |
| 1st Quarter 2025 | | 51.2 | 19 | Yes |
| 2nd Quarter 2025 | 230 | 155 | 40 | |
| 3rd Quarter 2025 | 340 | 69 | 58 | |

## II.    STORMWATER POLLUTION PREVENTION PLAN VIOLATIONS

Rabanco is in violation of the Permits' SWPPP provisions as follows:

1.   Condition S3.A of the Permits requires Rabanco to develop and implement a SWPPP that is consistent with permit requirements, fully implemented as directed by permit conditions, and updated as necessary to maintain compliance with permit conditions. Rabanco has violated these requirements of the Permits each and every day since beginning operations at the facility and continues to violate them because its SWPPP is not consistent with permit requirements, has not been fully implemented, and has not been updated as necessary.

2.  The SWPPP fails to satisfy the requirements of Condition S3 of the Permits because it does not adequately describe BMPs.  Condition S3.B.4 of the Permits require that the SWPPP include a description of the BMPs that are necessary for the facility to eliminate or reduce the potential to contaminate stormwater. Condition S3.A.2 of the Permits requires that the SWPPP include BMPs consistent with the Stormwater Management Manual for Western Washington (SWMMWW), available at https://fortress.wa.gov/ecy/ezshare/wq/SWMMs/2024SWMMWW/2024_SWMMWW.htm or document how stormwater BMPs included in the SWPPP are demonstratively equivalent to the practices contained in the approved stormwater technical manuals, including the proper selection, implementation, and maintenance of all applicable and appropriate BMPs. Rabanco's SWPPP does not comply with these requirements because it does not adequately describe BMPs, rather, the SWPPP includes language copied verbatim from the SWMMWW and is lacking a detailed explanation of how and where the selected BMPs are being implemented at the facility.

3.  Rabanco's SWPPP fails to satisfy the requirements of Condition S3.B.2 of the Permits because it fails to include a facility assessment as mandated.  The SWPPP fails to include an adequate facility assessment because it does not describe the flow of goods and materials through the facility as required.

4. Rabanco's SWPPP fails to satisfy the requirements of Condition S3.B.1 of the Permits because it does not include a site map that identifies each sampling location with a unique identifying number, areas of pollutant contact associated with specific industrial activities, conditionally approved non-stormwater discharges, areas of existing and potential soil erosion, and lands and waters adjacent to the site that may be helpful in identifying discharge points or drainage routes. The site map also labels two different outfalls as "Outfall 002," and identifies an Outfall 004 and an Outfall 005, which are not discussed elsewhere in the SWPPP.

5.  Rabanco's SWPPP fails to comply with Condition S3.B.2.b of the Permits because it does not include an inventory of industrial activities that identifies all areas associated with industrial activities that have been or may potentially be sources of pollutants as required. The SWPPP does not identify all areas associated with loading and unloading of material handled at the facility, outdoor manufacturing and processing, onsite dust or particulate generating processes, on-site waste treatment, storage, or disposal, roofs or other surfaces exposed to air emissions from a manufacturing building or a process area, and roofs or other surfaces composed of materials that may be mobilized by stormwater as required by these conditions.

6.  Condition S3.B.4 of the Permits requires that permittees include in their SWPPPs and implement certain mandatory BMPs unless site conditions render the BMP unnecessary or infeasible, and an alternative and demonstrably equivalent BMP is provided. Rabanco is in violation of this requirement because it has failed to describe specifically in its SWPPP and implement the mandatory BMPs of the Permits.

7.  Rabanco's SWPPP does not comply with Condition S3.B.4.b.i of the Permits because it does not include required operational source control BMPs in the following categories: good housekeeping (including a schedule/frequency for each housekeeping task, how tires at the facility will be stored to prevent contact with stormwater, and BMPs for keeping *all* dumpsters covered or fit with a storm-resistant lid); preventive maintenance (including cleaning catch basins when the depth of debris reaches 60% of sump depth, maintenance of stormwater drainage/treatment facilities in accordance with maintenance standards, and the schedule/frequency for each task as well as a maintenance log for completing each task); employee and contractor/vendor training (including an overview of what is in the SWPPP who is responsible for maintaining

the SWPPP, and its location onsite, employees' and contractors' roles in ensuring proper maintenance of BMPs, spill response procedures, good housekeeping, maintenance requirements, and material management practices, how training will be conducted, a log of the dates on which specific employees received training, and a report of all electronically performed trainings, as applicable); inspections and recordkeeping (including documentation of procedures to ensure compliance with permit requirements for inspections and recordkeeping, provision of a visual inspection report or checklist, provision of a tracking or follow-up procedure to ensure that a report is prepared and appropriate action taken in response to visual monitoring, certification of compliance with the SWPPP and Permit, and all completed inspection reports).

       8. Rabanco's SWPPP does not comply with Condition S3.B.4.b.i.7 of the Permits because it does not include specific measures to eliminate the discharge of process wastewater, domestic wastewater, noncontact cooling water, and other illicit discharges to stormwater sewers, or to surface waters and ground waters of the state.

       9. Rabanco's SWPPP fails to satisfy the requirements of Condition S3.B.5 of the Permits because it fails to include a stormwater sampling plan as required. The SWPPP does not include a sampling plan that: identifies all points of discharge to surface waters, stormwater drainage systems, or discrete groundwater infiltration locations; documents why each discharge point is not sampled; identifies each sampling point by its unique identifying number; identifies all parameters for analysis, holding times and preservatives, laboratory quantitation levels, and analytical methods; and that specifies the procedure for submitting the results to Ecology.

## III.    MONITORING AND REPORTING VIOLATIONS

### A.    Failure to Collect Quarterly Samples

Condition S4.B of the Permits requires Rabanco to collect a sample of its stormwater discharge once during every calendar quarter from each designated sampling location. Conditions S4.B.3.a of the 2020 Permit and S4.B.3 of the 2025 Permit require Rabanco to collect stormwater samples at each distinct point of discharge offsite except for substantially identical outfalls, in which case only one of the substantially identical outfalls must be sampled. These conditions set forth sample collection criteria but require the collection of a sample even if the criteria cannot be met. The facility has at least five distinct points of discharge off-site: SD1, SD2, SD4, SD6, and BS1, as well as surface runoff to roadside ditches via the site's driveways and other locations, and discharges to the sanitary sewer at the Facility.

Rabanco violated these requirements by failing to collect stormwater samples at any of its designated discharge points during the third quarter of 2024, and by failing to ever collect stormwater samples at designated monitoring point BS1.

Rabanco has also violated and continues to violate these conditions because it does not sample each distinct point of discharge off-site. Rabanco does not sample its stormwater discharges from SD1, SD6, or surface runoff, which are not substantially identical to any of Rabanco's other discharge points. In addition, Rabanco purports to sample its stormwater discharges from BS1, but has never submitted DMR data reflecting that this sampling actually occurs. These violations have occurred and continue to occur each and every quarter since beginning operations at the Facility that Rabanco was and is required to sample its stormwater discharges,

including the quarters in which it collected stormwater discharge samples from some, but not each, point of discharge.  These violations will continue until Rabanco commences monitoring all distinct points of discharge.

### B.    Failure to Analyze Quarterly Samples

Condition S5.A.1 of the Permits requires Rabanco to analyze stormwater samples collected quarterly for turbidity, pH, total copper, and total zinc. Condition S5.B and Table 3 of the 2025 Permit requires Rabanco to analyze stormwater samples collected quarterly for six different PFAS compounds. Additionally, Condition S6.C.2 of the Permits requires Rabanco to analyze stormwater samples collected quarterly for total suspended solids (TSS) because the Duwamish Waterway is categorized as a Puget Sound Sediment Cleanup site. *See* Industrial Stormwater General Permit (December 2, 2024) p. 47, fn. 13.

Rabanco violated these conditions by failing to analyze any of its stormwater samples for TSS in the third and fourth quarters of 2023; the first, second, third, and fourth quarters of 2024; and the first, second, and third quarters of 2025.

### C.    Failure to Timely Submit Discharge Monitoring Reports

Condition S9.B of the Permits require Rabanco to use DMR forms provided or approved by Ecology to summarize, report and submit monitoring data to Ecology.  For each monitoring period (calendar quarter) a DMR must be completed and submitted to Ecology not later than 45 days after the end of the monitoring period. Rabanco has violated these conditions by failing to submit a DMR with sampling data from SD1, SD6, and BS1 within the time prescribed for the third and fourth quarters of 2023; the first, second, third, and fourth quarters of 2024; and the first, second, and third quarters of 2025.

### D.    Failure to Comply with Visual Monitoring Requirements

Conditions S7.A and B of the Permits require that monthly visual inspections be conducted at the facility by qualified personnel.  Each inspection is to include observations made at stormwater sampling locations and areas where stormwater associated with industrial activity is discharged, observations for the presence of floating materials, visible oil sheen, discoloration, turbidity, odor, etc. in the stormwater discharges, observations for the presence of illicit discharges or illicit connections, a verification that the descriptions of potential pollutant sources required by the permit are accurate, a verification that the site map in the SWPPP reflects current conditions, and an assessment of all BMPs that have been implemented (noting the effectiveness of the BMPs inspected, the locations of BMPs that need maintenance, the reason maintenance is needed and a schedule for maintenance, and locations where additional or different BMPs are needed). Once annually, dumpsters must be inspected for holes or defects.

Condition S7.C of the Permits requires that Rabanco record the results of each inspection in an inspection report or checklist that is maintained on-site and that documents the observations, verifications, and assessments required.  The report/checklist must include the time and date of the inspection, the locations inspected, a statement that, in the judgment of the person conducting the inspection and the responsible corporate officer, the facility is either in compliance or out of compliance with the SWPPP and the Permits, a summary report and schedule of implementation of the remedial actions that Rabanco plans to take if the site inspection indicates that the facility is out of compliance, the name, title, signature and certification of the

person conducting the facility inspection, and a certification and signature of the responsible corporate officer or a duly authorized representative.

Rabanco is in violation of these requirements of Condition S7 of the Permits because, since beginning operations at the Facility, it has failed to conduct each of the requisite visual monitoring and inspections, failed to prepare and maintain the requisite inspection reports or checklists, and failed to make the requisite certifications and summaries.

## IV.   CORRECTIVE ACTION VIOLATIONS

### A.   Violations of the Level One Requirements

Condition S8.B of the Permits requires Rabanco take specified actions, called a "Level One Corrective Action," each time quarterly stormwater sample results exceed a benchmark value or are outside the benchmark range for pH.

As described by Condition S8.B of the Permits, a Level One Corrective Action requires Rabanco to: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits and contains the correct BMPs from the applicable Stormwater Management Manual; (2) make appropriate revisions to the SWPPP to include additional operational source control BMPs with the goal of achieving the applicable benchmark values in future discharges and sign and certify the revised SWPPP in accordance with Condition S3.A.6 of the Permits; and (3) summarize the Level One Corrective Action in the Annual Report required under Condition S9.B of the Permits.  Condition S8.B.3 of the 2020 Permit and S8.B.2 of the 2025 Permit requires Rabanco to implement the revised SWPPP as soon as possible, and no later than the DMR due date for the quarter the benchmark was exceeded.

Condition S5.A and Table 2 of the Permits establishes the following benchmarks: turbidity 25 NTU; pH 5 – 9 SU; total copper 14 µg/L; and total zinc 117 µg/L. Condition S6.C.2 and Table 7 of the Permits establishes the following additional benchmarks for permittees discharging to Puget Sound Sediment Cleanup Sites, like Rabanco: TSS 30 mg/L.

Rabanco has violated the requirements of the Permits described above by failing to conduct a Level One Corrective Action in accordance with permit conditions, including the required review, revision and certification of the SWPPP, the required implementation of additional BMPs, and the required summarization in the annual report each time since beginning operations at the Facility that its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH, including the benchmark excursions listed in Tables 1 and 2, above.

### B.   Violations of the Level Two Requirements

Condition S8.C of the Permits requires Rabanco take specified actions, called a "Level Two Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range for pH for any two quarters during a calendar year.

As described by Condition S8.C of the Permits, a Level Two Corrective Action requires Rabanco to: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits; (2) make

appropriate revisions to the SWPPP to include additional structural source control BMPs in all areas/discharge points that exceeded the benchmark parameter with the goal of achieving the applicable benchmark value(s) in future discharges and sign and certify the revised SWPPP in accordance with Condition S3.A.5 of the Permits; and (3) summarize the Level Two Corrective Action (planned or taken) in the Annual Report required under Condition S9.C of the Permits.  Condition S8.C.4 of the Permits requires Rabanco implement the revised SWPPP according to Condition S3 of the Permits and the applicable stormwater management manual as soon as possible, and no later August 31st of the following year.

The Permits establish the benchmarks applicable to Rabanco described in Section IV.A of this notice of intent to sue letter.

Rabanco has violated the requirements of the Permits described above by failing to conduct a Level Two Corrective Action in accordance with permit conditions, including the required review, revision and certification of the SWPPP, the required implementation of additional BMPs, including additional structural source control BMPs, and the required summarization in the annual report each time since beginning operations at the Facility that its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH for any two quarters during a calendar year.  As indicated in Tables 1 and 2 above, these violations include, but are not limited to, Rabanco's failure to fulfill these obligations for turbidity, copper, and zinc triggered by its stormwater sampling during calendar year 2023; and for turbidity, copper, zinc, and oil & grease triggered by its stormwater sampling during calendar year 2024. Rabanco has triggered Level Two Corrective Actions for zinc, turbidity, oil & grease, and copper in calendar year 2025. Should Rabanco fail to timely comply with the Level Two Corrective Action requirements for its 2025 benchmark exceedances, Soundkeeper intends to sue for these violations, as well.

## C.    Violations of the Level Three Requirements

Condition S8.D of the Permits requires Rabanco take specified actions, called a "Level Three Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range for pH for any three quarters during a calendar year.

As described by Condition S8.D of the Permits, a Level Three Corrective Action requires Rabanco to: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits; (2) make appropriate revisions to the SWPPP to include additional treatment BMPs in all areas/discharge points that exceeded the benchmark parameter with the goal of achieving the applicable benchmark value(s) in future discharges and additional operational and/or structural source control BMPs if necessary for proper function and maintenance of treatment BMPs, and sign and certify the revised SWPPP in accordance with Condition S3.A.5 of the Permits; and (3) summarize the Level Three Corrective Action (planned or taken) in the Annual Report required under Condition S9.C of the Permits, including information on how monitoring, assessment, or evaluation information was (or will be) used to determine whether existing treatment BMPs will be modified/enhanced, or it new/additional treatment BMPs will be installed.  Condition S8.D.2 of the Permits requires that a licensed professional engineer, geologist, hydrogeologist, of certified professional in stormwater quality must review, sign, and certify the portion of the SWPPP that addresses stormwater treatment structures or processes.  *See* Permit Appendix 2 (defining "qualified industrial stormwater professional").

Condition S8.D.3 of the Permits requires that, before installing BMPs that require the site-specific design or sizing of structures, equipment, or processes to collect, convey, treat, reclaim, or dispose of industrial

stormwater, Rabanco submit an engineering report, plans, and specifications, and an operations and maintenance manual to Ecology for review in accordance with chapter 173-204 of the Washington Administrative Code.  The engineering report must be submitted no later than six months after the last day of the calendar year in which the Level 3 was triggered (2025 Permit) or by the May 15th prior to the Level 3 deadline (2020 Permit).  The plans and specifications and the operations and maintenance manual must be submitted to Ecology no later than 30 days after construction/installation is complete.

Condition S8.D.5 of the Permits requires Rabanco to fully implement the revised SWPPP according to condition S3 of the Permits and the applicable stormwater management manual as soon as possible, and no later than September 30th of the following year.

The Permits establish the benchmarks applicable to Rabanco described in Section IV.A of this notice of intent to sue letter.

Rabanco has violated the requirements of the Permits described above by failing to conduct a Level Three Corrective Action in accordance with permit conditions, including: the required review, revision and certification of the SWPPP; the requirement to have a specified professional sign and certify the portion of the SWPPP pertaining to treatment; the required implementation of additional BMPs, including additional treatment BMPs; the required submission of an engineering report, plans, specifications, and an operations and maintenance plan; and the required summarization in the annual report each time since beginning operations at the Facility its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH for any three quarters during a calendar year. As indicated in Tables 1 and 2 above, these violations include, but are not limited to, Rabanco's failure to fulfill these obligations for turbidity triggered by its stormwater sampling during calendar year 2024. Rabanco has triggered Level Three Corrective Actions for turbidity and copper in calendar year 2025. Should Rabanco fail to comply with its Level Three Corrective Action requirements for its 2025 benchmark exceedances, Soundkeeper intends to sue for these violations, as well.

## V.    VIOLATIONS OF THE ANNUAL REPORT REQUIREMENTS

Condition S9.C of the Permits require Rabanco to submit an accurate and complete annual report to Ecology no later than May 15 of each year. The annual report must include corrective action documentation as required in Condition S8.B – D of the Permits.  If a corrective action is not yet completed at the time of submission of the annual report, Rabanco must describe the status of any outstanding corrective action. Specific information to be included in the annual report is identification of the conditions triggering the need for corrective action, description of the problem and identification of dates discovered, summary of any Level 1, 2, or 3 corrective actions completed during the previous calendar year, including the dates corrective actions were completed, and description of the status of any Level 2 or 3 corrective actions triggered during the previous calendar year, including identification of the date Rabanco expects to complete corrective actions.

Rabanco has violated this condition. The annual report submitted by Rabanco for 2024 (submitted in 2025) does not include the required information.  Specifically, there is no description of the additional operational, structural source control, and treatment BMPs Rabanco implemented or plans to implement as part of its Level 1, 2 and 3 corrective actions for benchmark exceedances of oil & grease, copper, turbidity, and zinc.

## VI.    VIOLATIONS OF THE RECORDKEEPING REQUIREMENTS

### A.    Failure to Record Information

Condition S4.B.4 of the Permits requires Rabanco record and retain specified information for each stormwater sample taken, including the sample date and time, a notation describing if Rabanco collected the sample within the first 12 hours of stormwater discharge event, an explanation of why Rabanco could not collect a sample within the first 12 hours of a stormwater discharge event, the sample location, method of sampling and of preservation, and the individual performing the sampling.  Rabanco is in violation of these conditions as it has not recorded each of these specified items for each sample taken since beginning operations at the Facility.

### B.    Failure to Retain Records

Condition S9.D of the Permits requires Rabanco to retain for a minimum of five years a copy of the current Permit, a copy of Rabanco's coverage letter, records of all sampling information, inspection reports including required documentation, any other documentation of compliance with permit requirements, all equipment calibration records, all BMP maintenance records, all original recordings for continuous sampling instrumentation, copies of all laboratory results, copies of all required reports, and records of all data used to complete the application for the Permit. Rabanco is in violation of these conditions because it has failed to retain records of such information, reports, and other documentation since beginning operations at the Facility.

## VII.    FAILURE TO REPORT PERMIT VIOLATIONS

Condition S9.F of the Permits requires Rabanco to take certain actions in the event Rabanco is unable to comply with any of the terms and conditions of the Permits which may endanger human health or the environment, or exceed any numeric effluent limitation in the permit.  In such circumstances, Rabanco must immediately take action to minimize potential pollution or otherwise stop the noncompliance and correct the problem, and Rabanco must immediately notify the appropriate Ecology regional office of the failure to comply. Rabanco must then submit a detailed written report to Ecology, including specified details, within 5 days of the time Rabanco became aware of the circumstances, unless Ecology requests an earlier submission.

Rabanco routinely violates these requirements, including each and every time Rabanco failed to comply with the corrective action requirements described in Section IV of this notice of intent to sue; and each and every time Rabanco discharged stormwater with concentrations of pollutants in excess of the Permit benchmarks, as described in Tables 1 and 2, above. All these violations may endanger human health or the environment.

## VIII.    REQUEST FOR SWPPP

Pursuant to Condition S9.G of the Permits, Soundkeeper hereby requests that Rabanco provide a copy of, or access to, its SWPPP complete with all incorporated plans, monitoring reports, checklists, and training and inspection logs.  The copy of the SWPPP and any other communications about this request should be directed to the undersigned at the letterhead address.

Should Rabanco fail to provide the requested complete copy of, or access to, its SWPPP as required by Condition S9.G of the Permits, it will be in violation of that condition, which violation shall also be subject to this notice of intent to sue and any ensuing lawsuit.

## IX.    CONCLUSION

The above-described violations reflect those indicated by the information currently available to Soundkeeper.  These violations are ongoing. Soundkeeper intends to sue for all violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue.

Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), each of the above-described violations subjects the violator to a penalty of up to $68,445 per violation per day. *See* 40 C.F.R. § 19.4.  In addition to civil penalties, Soundkeeper will seek injunctive relief to prevent further violations under Sections 505(a) and (d) of the CWA, 33 U.S.C. § 1365(a) and (d), and such other relief as is permitted by law. Further, Section 505(d) of the CWA, 33 U.S.C. § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

Soundkeeper believes that this NOTICE OF INTENT TO SUE sufficiently states grounds for filing suit. We intend, at the close of the 60-day notice period, or shortly thereafter, to file a citizen suit against Rabanco, Ltd. and Republic Services Alliance Group, Inc. under Section 505(a) of the Clean Water Act for violations.

During the 60-day notice period, we would be willing to discuss effective remedies for the violations addressed in this letter and settlement terms.  If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate those discussions within 10 days of receiving this notice so that a meeting can be arranged and so that negotiations may be completed promptly. We do not intend to delay the filing of a complaint if discussions are continuing when the notice period ends.

Sincerely,

Smith & Lowney, PLLC

By:     */s/ Evelyn Mailander*
        Evelyn Mailander
        Marc Zemel

cc:    Lee Zeldin, Administrator, U.S. EPA
       Emma Pokon, Region 10 Administrator, U.S. EPA
       Casey Sixkiller, Director, Washington Department of Ecology
       CT Corporation System, Registered Agent (711 Capitol Way S., Suite 204, Olympia, WA 98501)